UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

STEPHANIE MELISSA KENNEDY,

        *Plaintiff*,

  -against-

                                **MEMORANDUM AND ORDER**
                                19-CV-01740 (KAM)

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Stephanie Melissa Kennedy ("plaintiff")
appeals the final decision of the Commissioner of Social
Security ("defendant"), which found plaintiff not disabled and
thus not entitled to disability insurance benefits ("DIB") under
sections 216(i) and 223(d) of the Social Security Act ("the
Act").  Before the court are the parties' cross-motions for
judgment on the pleadings.  For the reasons set forth below,
plaintiff's motion for judgment on the pleadings is GRANTED in
part, the Commissioner's motion for judgment on the pleadings is
DENIED, and this action is REMANDED for further proceedings
consistent with this Memorandum and Order.

## BACKGROUND

        The factual and procedural background leading to this
action is set forth in the administrative record.

(Administrative Transcript ("Tr."), ECF No. 13.)  The court has reviewed the parties' respective motions for judgment on the pleadings and the administrative record.  The parties entered into a joint stipulation of facts on March 16, 2020, detailing plaintiff's medical history and administrative hearing testimony at her administrative hearing, which the court hereby incorporates by reference.  (*See* Joint Stipulation of Facts ("Stip."), ECF No. 12-1.)

**I. Procedural History**

Plaintiff filed an application for disability insurance benefits on March 10, 2015, alleging disability beginning January 1, 2006[1], due to impulse control disorder, mental health issues, asthma, and allegations of bipolar disorder.  (Tr. at 85, 358.)  Plaintiff's claim was denied on June 24, 2015.  (*Id.*)  On July 1, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On July 12, 2017, plaintiff appeared with counsel and testified before ALJ Michelle L. Allen ("ALJ Allen" or the "ALJ").  (*Id.* at 136-66.)  At the hearing, ALJ Allen heard testimony by

---

[1]     The court notes that, during the hearing held before ALJ Michelle L. Allen, plaintiff's attorney asked to amend the alleged onset from 1/1/06 to the date of the application, because otherwise the onset date would be "a little excessive."  (Tr. at 139.)  The ALJ responded that "that[ is] how I would look at it anyway."  (*Id.*)  No formal amendment was requested or granted.

plaintiff and Dawn Blythe, a vocational expert. (*Id.* at 135-70.)

On September 27, 2017, ALJ Allen issued a decision affirming the SSA's determination that plaintiff did not qualify as disabled within the meaning of the Act and, as a result, was not entitled to benefits. (*Id.* at 82-98.)  In a letter dated November 17, 2017, plaintiff appealed ALJ Allen's decision to the Appeals Council. (*Id.* at 326-27.)  In response, the Appeals Council issued a letter to plaintiff stating that plaintiff's appeal was received on December 8, 2017, which was after the Appeals Council's December 1, 2017 deadline. (*Id.* at 12-14.)  Plaintiff provided a certified mail receipt confirming that her November 17, 2017 letter of appeal was actually received by the Appeals Council on November 21, 2017. (*Id.* at 328-31.)  In addition, in a letter dated December 12, 2018, the Appeals Council notified plaintiff's attorney that Exhibit 20F, medical records from Dr. Shoulton, and Exhibit 21F, medical records from FEDCAP, had not been proffered to plaintiff before the ALJ's unfavorable decision. (*Id.* at 8-9.)

On January 24, 2019, the Appeals Council denied plaintiff's appeal, making ALJ Allen's decision the final decision of the Commissioner. (*Id.* at 1-7.)  This action followed. (*See generally* Complaint ("Compl."), ECF No. 1.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "'[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Inquiry into legal error requires the court to ask whether "'the claimant has had a full

hearing under the [Commissioner's] regulations and in accordance
with the beneficent purposes of the [Social Security] Act.'"
*Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz
v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

<u>**DISCUSSION**</u>

**I. The Commissioner's Five-Step Analysis of Disability Claims**

A claimant must be "disabled" within the meaning of
the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a),
(d). A claimant qualifies as disabled when she is unable to
"engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32.
The impairment must be of "such severity" that the claimant is
unable to do her previous work or engage in any other kind of
substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner
prescribe a five-step sequential evaluation process for
determining whether a claimant meets the Act's definition of
disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process
is essentially as follows:

5

> [I]f the Commissioner determines (1) that the claimant is
> not working, (2) that [s]he has a 'severe impairment,' (3)
> that the impairment is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a determination of
> disability, and (4) that the claimant is not capable of
> continuing in [her] prior type of work, the Commissioner
> must find [her] disabled if (5) there is not another type
> of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335

F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).

If the answer at any of the previously mentioned steps is "no,"

the analysis stops and the ALJ must find that the claimant does

not qualify as disabled under the Act.

"The claimant has the general burden of proving . . .

his or her case at steps one through four of the sequential

five-step framework established in the SSA regulations."

*Burgess*, 537 F.3d at 128 (internal quotation marks and citations

omitted). "However, [b]ecause a hearing on disability benefits

is a nonadversarial proceeding, the ALJ generally has an

affirmative obligation to develop the administrative record."

*Id.* (internal quotation marks omitted). "The burden falls upon

the Commissioner at the fifth step of the disability evaluation

process to prove that the claimant, if unable to perform her

past relevant work [and considering her residual functional

capacity, age, education, and work experience], is able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c); *see also* 20 C.F.R. § 416.945(a)(2).

## II. The ALJ's Application of the Five-Step Analysis

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the SSA regulations, the ALJ made the following determinations.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 20, 2015.  (Tr. at 87.)

At step two, the ALJ determined that plaintiff had the severe impairments of asthma, obesity, depressive disorder, attention deficit hyperactivity disorder, and cannabis use disorder, in remission.  (*Id.*)

7

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ analyzed whether plaintiff met listings 3.02 (chronic respiratory disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 87-88.) The ALJ found that the evidence of chronic respiratory disorders failed to establish the requisite FEV1 levels under listing 3.02A and the requisite number of attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year, under listing 3.02B. (*Id.* at 87-88.) Additionally, the criteria set forth in paragraph B of Medical Listings for mental disorders, 12.04 and 12.06, were not satisfied because the ALJ found that plaintiff had a moderate, not marked, limitation in understanding, remembering, or applying information; a mild, not marked, limitation in interacting with others; a mild, not marked, limitation in concentrating, persisting, or maintaining pace; and a moderate, not marked, limitation in adapting or managing herself. (*Id.* at 88.)

The ALJ next concluded that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at

all exertional levels with the nonexertional limitations of never climbing ladders, ropes, or scaffolds.  (*Id.* at 88.)  The ALJ further concluded that plaintiff: can never work at unprotected heights but can work around moving mechanical parts occasionally; can have occasional exposure to dust, odors, fumes, and pulmonary irritants; can be exposed to moderate noise; is limited to hearing and understanding simple oral instructions; is limited to performing simple, routine, and repetitive tasks; is limited to simple work-related decisions; can frequently respond appropriately to supervisors and occasionally interact with coworkers and the public; and is limited to tolerating few changes in a routine work setting, which is defined as occasional changes in the work setting. (*Id.* at 88-89.)

Plaintiff complained of the following symptoms: disrupted sleep, feeling down, crying spells, a prior history of screaming and breaking things prior to a medication change, easy distraction, difficulty finishing tasks and staying focused, loss of interest, and anxiety.  (*Id.* at 89.)

In arriving at this RFC, the ALJ accorded varying weight to the medical opinions, specifically: "great weight" to the opinion of Dr. Lyudmila Trimba, M.D., a consultative examiner evaluating plaintiff's physical impairments; "little weight" to the opinion of Dr. Yardly Pierre-Jerome Shoulton,

9

M.D., plaintiff's treating physician for her physical impairments; "great weight" to the opinion of Dr. Arlene Broska, Ph.D., a consultative examiner evaluating plaintiff's mental impairments; and "partial weight" to the opinion of Dr. Naira Ambarian, D.O., plaintiff's treating physician for her mental impairments. (*Id.* at 90-91.)

Upon assessing the medical evidence and opinions, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent" with the evidence. (*Id.* at 89.)

At step four, the ALJ concluded that the plaintiff had no past relevant work experience. (*Id.* at 91.)

At step five, the ALJ concluded that given plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. (*Id.* at 92.) The ALJ supplied the vocational expert with the above information, who determined that plaintiff could perform the requirements of representative occupations like page, mail clerk, or photocopy machine operator. (*Id.*) The ALJ thus concluded that plaintiff was not disabled within the meaning of the Act. (*Id.* at 93.)

III.   **The ALJ Erred in Failing to Apply the Treating Physician Rule to the Opinions of Dr. Ambarian, Plaintiff's Treating Physician, but Properly Relied on the Opinions of Dr. Shoulton, Plaintiff's Treating Physician**

"[A]n ALJ should defer to 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[2] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider

---

[2]     The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, as plaintiff filed her claim on March 10, 2015. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his [or her] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129).

In this analysis, although an ALJ should generally explain the weight given to each opinion, remand is not required where application of the proper legal standards would lead to the same conclusion previously reached. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Failure to consider the opinion of a treating physician "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Id.* at 409. "Remand is unnecessary, however, '[w]here application of the correct legal standard could lead to only one conclusion.'" *Id.* (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).

For instance, in *Zabala*, the court found it was harmless error to "exclude[] evidence [that was] essentially duplicative of evidence considered by the ALJ," as there would be no reasonable likelihood that consideration of the unconsidered report would change the outcome. *Id.* at 409-10 (noting that "[t]he [unconsidered] report [was] largely identical to a [different] report by the same doctor, which the ALJ did consider," and which set forth substantially identical findings).

The Commissioner argues that the ALJ gave proper weight to the medical sources and that the ALJ's decision is supported by substantial evidence. (*See* Def. Mem. in Support of Def.'s Cross-Mot. for J. on the Pleadings ("Def. Mem.") at 4-10, ECF No. 12.) Plaintiff contends that the ALJ failed to properly apply the treating physician rule to the opinions of Drs. Shoulton and Ambarian. (Pl. Mem. in Support of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") at 3-4, ECF No. 10.) "The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger v. Barnhart,* 335 F.3d 99, 106-07 (2d Cir. 2003)). "SSA regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such

13

opinions 'controlling weight' in all but a limited range of circumstances." *Greek v. Colvin,* 802 F.3d 370, 376 (2d Cir. 2015) (internal citations omitted).  First, for the reasons detailed below in subsection B, *infra*, the ALJ afforded appropriate weight and consideration to the opinions of treating physician Dr. Shoulton.

Second, each of the *Burgess* factors that ALJ Allen was required to consider militate in favor of affording Dr. Ambarian's opinion greater weight than ALJ Allen afforded.  Dr. Ambarian is a certified specialist who has a years-long treatment relationship with plaintiff, and has supplied consistent, well-supported, medical evidence for her opinions. ALJ Allen only afforded "partial weight," rather than "controlling weight," to claimant's treating physician because ALJ Allen concluded that Dr. Ambarian's opinions were inconsistent with the substantial objective medical evidence. (Tr. at 91.)  The ALJ procedurally erred when she failed to explicitly consider the *Burgess* factors while determining what weight to afford the opinions and medical evidence from Dr. Ambarian.  *See Estrella*, 925 F.3d at 96.  "Because the ALJ procedurally erred, the question becomes whether a searching review of the record...assures the court...that the substance of the...rule was not traversed—i.e., whether the record otherwise provides 'good reasons' for assigning '[some] weight' to [the

treating physicians'] opinion[s]."  *See id.* (ellipsis in original) (citing *Halloran*, 362 F.3d at 32).

Based on the following review of the record, the court finds that ALJ Allen's conclusion that plaintiff's treating physician's opinions were inconsistent with the substantial objective medical evidence was based on the ALJ's factually deficient reading of the record.  The court remands and directs ALJ Allen to explicitly consider the *Burgess* factors and explain whether and why she affords or does not afford controlling weight to the opinions of plaintiff's treating physician Dr. Ambarian.

### A. The ALJ Erred in Considering Dr. Ambarian's Opinions

ALJ Allen erred in according only "partial weight," rather than "controlling weight," to claimant's treating physician of two-and-a-half years, Dr. Ambarian, when ALJ Allen erroneously concluded that Dr. Ambarian's opinion was (1) inconsistent with her own mental status exam findings, (2) unsupported by other medical record evidence, and (3) internally inconsistent.

First, the court reviews Dr. Ambarian's findings to determine whether they are inconsistent with her own mental status examination findings.  Dr. Ambarian opined, among other things, that due to her findings demonstrating plaintiff's mood disorder and schizophrenia, plaintiff is unable to meet

competitive standards regarding: sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; accepting instructions and respond appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; carrying out detailed instructions; and dealing with the stress of semi-skilled and skilled work.  (*Id.* at 564.)  Dr. Ambarian further opined that plaintiff has serious limitations in her ability to: maintain attention for a two-hour segment; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace; respond appropriately to changes in a routine work setting; be aware of normal hazards and take precautions; understand and remember detailed instructions; set realistic goals or make plans independently of others; and deal with the stress of semiskilled and skilled work.  (*Id.*)

The Commissioner argues that Dr. Ambarian's mental status examinations were "consistently unremarkable – even on the very day [Dr. Ambarian] penned the restrictive RFC."  (Def. Mem. at 7; Tr. at 562-566.)  In support, the Commissioner cites Dr. Ambarian's assessments that, at times throughout the two-

and-a-half year assessment period, plaintiff had: good hygiene
and grooming; calm and cooperative attitude; bright, stable, and
appropriate mood and affect; no anxiety or agitation; normal
speech; good insight, judgment, and impulse control; and grossly
intact cognition.  (Tr. at 493-589.)  Contrary to the
Commissioner's argument, however, the record demonstrates that
Dr Ambarian also assessed that plaintiff suffered from symptoms
of: mood disturbance; difficulty thinking or concentrating;
recurrent and intrusive recollections of a traumatic experience,
which are a source of marked distress but were in remission;
persistent disturbances of mood or affect paranoid thinking or
inappropriate suspiciousness; hallucinations or delusions;
emotional lability; illogical thinking; and easy
distractibility.  (Tr. at 562.)  Dr Ambarian also assessed that
plaintiff sometimes: felt like somebody was sometimes next to
her, when nobody was, *id.* at 542; hears voices but cannot
explain what the voices are saying, *id.* at 542, 547; and talks
to herself, *id.* at 547.  Based on the foregoing review of Dr.
Ambarian's findings, the court finds that Dr. Ambarian's
findings were supported by her mental status exam findings.
Consequently, the court finds that Dr. Ambarian's treatment of
plaintiff over the two-and-a-half year period was explained and
supported by mental status exam findings.

Second, the ALJ erred in concluding that Dr. Ambarian's opinions were inconsistent with other medical record evidence showing that plaintiff had mostly normal mental status examinations during the period in question. (Tr. at 91.) The ALJ discredits Dr. Ambarian's report for an alleged failure to mention plaintiff's previous cannabis use based on (1) commentary from plaintiff's mother and (2) the findings of plaintiff's other treating physician, Dr. Shoulton. (*Id.* at 91.)

First, the ALJ reasons that plaintiff's mother believes that plaintiff's "excessive marijuana use" is a "significant source" of plaintiff's problems. (*Id.*) However, plaintiff's mother's lay belief is not a medical fact nor diagnosis that may be considered as medical evidence to demonstrate an inconsistency with Dr. Ambarian's medical opinion. In addition, the record demonstrates that plaintiff's relationship with her mother is strained. (*Id.* at 154.) Plaintiff testified that, though she and her mother live together, they did not "really see eye-to-eye all the time," and plaintiff has "always been misunderstood by her [mother]." (*Id.*) Dr. Ambarian's counseling had in part been focused on strategies plaintiff could use to improve plaintiff's relationship with her mother. (*Id.*) Plaintiff testified that

none of Dr. Ambarian's strategies worked to repair her
relationship with her mother.  (*Id.*)

        Second, the Commissioner contends that the records of
plaintiff's other treating physician, Dr. Shoulton, show that
plaintiff was a "very heavy user of marijuana" and that Dr.
Shoulton diagnosed plaintiff with a history of marijuana
dependence.  (Def. Mem. at 7; Tr. at 441, 676.)  In one opinion,
Dr. Shoulton notes that "on discussion with the mother[,]
patient admits to cannabis habit" and that plaintiff's mother
believes that plaintiff's severe mood swings are related to her
cannabis use.  (Tr. at 441.)  However, at no point does Dr.
Shoulton arrive at a medical conclusion that plaintiff's mental
impairments are caused by plaintiff's history of cannabis use.
(Tr. at 438, 441.)  Also, it is unclear from the record how
relevant plaintiff's history with cannabis use is to her mental
impairments, as the ALJ found that plaintiff's historical
cannabis use occurred during only a part of the alleged
disability period, from 2014-2015, stopping before May 2015.
(Tr. at 90.)  Finally, Dr. Ambarian's treatment notes do in fact
indicate plaintiff's history of marijuana use, *e.g.*: "[history]
of marijuana last use in November 2014."  (Tr. at 547.)  Based
on the foregoing review of Dr. Ambarian's findings, the court
finds that Dr. Ambarian's findings were not inconsistent with
the other medical evidence indicating plaintiff's history of

marijuana use.  Consequently, the court finds that Dr.
Ambarian's treatment of plaintiff over the two-and-a-half year
period was not inconsistent with other medical record evidence.

       Finally, the ALJ mischaracterizes the evidence in
arriving at the conclusion that Dr. Ambarian's opinion was
internally inconsistent.  To support this finding, the ALJ cites
the finding that plaintiff "takes public transportation,
returned to school with limited success, has a boyfriend, and
goes to the doctor when she is not feeling well."  (*Id.* at 91.)
Contrary to the ALJ's selective findings, the record supports
the finding that plaintiff is limited in her ability to perform
daily activities.  For example, plaintiff testified that she
stopped attending school after eighth grade and has never had a
full-time job.  (*Id.* at 140, 143.)  Plaintiff attempted to
complete a three-month GED program but stopped attending after
one month because she could not concentrate and failed two of
the four required subjects.  (*Id.* at 141, 170.)  Though
plaintiff has a boyfriend, they do not often spend time together
outside of plaintiff's home, and plaintiff does not otherwise
socialize with others.  (*Id.* at 156-58.)  The Commissioner
contends that because plaintiff claims to have "babysat" a 17-
year-old with autism and socialized with friends in the past,
plaintiff has the ability to perform basic functions.  (Def.
Mem. at 8; Tr. at 545.)  Performance of such limited, one-off

20

activities, however, is not indicative of an ability to perform sustained work.  "[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Bigler v. Comm'r of Soc. Sec.,* No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart,* No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004).  *See also Murdaugh v. Sec'y of Dep't of Health & Human Servs.,* 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table is scarcely said to controvert the medical evidence."); *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir. 1983).

Dr. Ambarian's opinion is based on examinations and sound medical evidence collected over a two-and-a-half-year period; during that time, plaintiff struggled with her mental health, and experienced varying levels of improvement and worsening of her symptoms.  (*See* Tr. at 492-549.)  Dr. Broska's finding, after a single examination, that plaintiff's psychiatric impairments do not appear to be significant enough

to interfere with her ability to function on a daily basis, is not sufficient, much less substantial, medical evidence to discount Dr. Ambarian's well-informed opinion.  "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).  An inconsistency between the opinion of a treating physician and that of a consultative examiner "is not sufficient, on its own, to reject the opinion of the treating physician." *Cammy v. Colvin*, No. 12-CV-5810, 2015 WL 6029187, at *14 (E.D.N.Y. Oct. 15, 2015) (quoting *Donnelly v. Comm'r of Soc. Sec.*, 49 F. Supp. 3d 289, 305 (E.D.N.Y. 2014)).  Indeed, during the course of Dr. Ambarian's treating relationship with plaintiff, Dr. Ambarian has noted periods of time where plaintiff presented minimal signs of mental impairments and could function on a daily basis, *see, e.g.*, Tr. at 499-504, similar to the one-off findings of consultative examiner Dr. Broska.  However, such findings must be evaluated in the context of the other significant deficits and impairments Dr. Ambarian found during her two-and-a-half-year treatment period, *see supra*, which Dr. Broska's one-time observation could not be expected to reproduce.

Accordingly, for the reasons stated above, the court finds that Dr. Ambarian's opinion was well-supported and explained by multiple mental status exam findings over a two-

and-a-half year period, and was not contradicted by other
substantial medical evidence. On remand, the ALJ is directed to
explicitly consider the *Burgess* factors and either afford
controlling weight to Dr. Ambarian's opinion or explain why she
will not do so.

### B. The ALJ Properly Considered Dr. Shoulton's Opinions

Plaintiff argues that ALJ Allen erred in according
only "little weight," rather than "controlling weight," to
claimant's treating physician, Dr. Shoulton, when ALJ Allen
concluded that Dr. Shoulton's opinion was internally
inconsistent and also inconsistent with substantial objective
medical evidence. (Pl. Mem. at 3.) The court finds that the
ALJ properly (1) concluded that Dr. Shoulton's findings are
inconsistent with the other medical record evidence and (2)
considered Dr. Shoulton's medical findings.

First, in his report, Dr. Shoulton assessed that
plaintiff suffered from only physical limitations despite
providing only a mental diagnosis of impulse control disorder.
(Tr. at 555-560, 646-649.) Dr. Shoulton opined that plaintiff
had the following physical limitations: inability to sit, stand,
or walk; inability to lift or carry weight less than ten pounds;
inability to look down, turn her head right or left, look up, or
hold her head in a static position; inability to twist, stoop,
crouch/squat, climb ladders, or climb stairs. (*Id.*) However,

23

plaintiff stipulates that she "reported that she had no physical limitations, other than walking slower due to her medication." (Stip. at 2.)  In addition, plaintiff testified that she took the bus both to the hearing and took the bus daily for a month when attempting to complete her GED program.  (*Id*. at 140-41.)

At the administrative hearing, plaintiff's attorney stated that, according to Dr. Shoulton, plaintiff "suffers from obesity which limits her ambulation a little bit," and that plaintiff's "main focus is the mental impairments in combination with the physical." (*Id*. at 144.)  Plaintiff's subsequent testimony focused on her mental impairments only and not her physical impairments.  (*Id.*)  Based on the foregoing review of Dr. Shoulton's findings, the court finds that the ALJ accurately concluded that Dr. Shoulton's opinions regarding plaintiff's physical abilities was inconsistent with substantial evidence in the record because no evidence in the record supported such significant physical limitations.  Consequently, the court finds that the ALJ adequately weighed the treating internist Dr. Shoulton's medical opinions.

Second, the ALJ properly considered Dr. Shoulton's medical records in deciding whether to afford Dr. Shoulton's opinion controlling weight.  In making her RFC determination, the ALJ refers to Dr. Shoulton's medical records as contained in Exhibit 2F.  (*Id.* at 89-90.)  The ALJ referred to Dr. Shoulton's

findings of: obesity (Tr. at 89, citing 447); normal examination physical findings (Tr. at 90, citing 429-76); normal mental status findings (Tr. at 90, citing 429-76); and history of cannabis use. (Tr. at 90, citing 438.)  Plaintiff argues that the ALJ failed to consider Exhibit 21F, which contained additional medical records from Dr. Shoulton from December 13, 2013 to July 11, 2017.  (Tr. at 644-776.) However, the court finds that inclusion of these records would not have changed the ALJ's RFC determination.  For example, notes from a routine visit with Dr. Shoulton on June 20, 2017, the day before Dr. Shoulton reported that plaintiff suffered from multiple extreme physical limitations, state that plaintiff had "been feeling relatively well" and that plaintiff was not experiencing any physical limitations.  (*Id.* at 653-54.)  The other medical records in Exhibit 21 do not indicate any significant physical limitations, and thus do not support Dr. Shoulton's findings of extreme physical limitation.  Based on the foregoing review of Dr. Shoulton's medical records, the court finds nothing in Exhibit 21F that would have changed the ALJ's RFC determination. Consequently, the court finds that the ALJ adequately considered Dr. Shoulton's medical records.

### III. The ALJ Did Not Sufficiently Account for Plaintiff's Moderate Nonexertional Limitations in Her RFC

The ALJ also erred by making an RFC determination without addressing the vocational expert's testimony regarding the hypothetical employability of an individual who (1) would be off task more than ten percent of the day, (2) absent more than one day per month, (3) would require four daily reminders to stay on task, or (4) could not make decisions.  (Tr. at 169-70.)

At the last step of the disability determination, the Commissioner has the burden to prove that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  In relying on a vocational expert's testimony to satisfy this burden, posing a "hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony."  *Gray v. Astrue*, No. 1:06-CV-0456, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009); *see also De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("In positing hypothetical questions to the vocational consultant," the ALJ must "present the full extent of [the claimant's] disabilities.").

Although the ALJ posed four hypotheticals to the vocational expert, *see* Tr. at 169-70, the ALJ cites only a

portion of the hypotheticals in issuing her decision.  (Tr. at
92-93.)  The omission of these hypotheticals requires further
explanation, as the vocational expert testified that none of the
individuals in the omitted hypotheticals would be able to
sustain employment.  *See Harris v. Commissioner of Social
Security*, No. 17-cv-3867, 2020 WL 1941229, at *12 (E.D.N.Y. Apr.
22, 2020).

 The Commissioner argues that the ALJ properly relied
on the vocational expert's testimony because the record does not
establish that plaintiff has the specific limitations provided
in these four hypothetical questions.  (Def. Mem. at 10.)  The
ALJ's decision, however, states that "[t]here is evidence of
mild limitation making appropriate decisions, and mild to
moderate limitation relating adequately with others and
appropriately dealing with stress."  (Tr. at 91.)  Although the
ALJ found that these impairments do not appear to interfere with
plaintiff's ability to function on a daily basis, the ALJ should
have considered whether these impairments would prevent
plaintiff from sustaining employment.  Without the ALJ's
rationale on these important issues, the court cannot conduct a
meaningful review of the ALJ's decision and cannot conclude that
his errors were harmless. *See, e.g.*, *Matthews v. Comm. of Soc.
Sec.*, No. 1:17-cv-00371-MAT, 2018 WL 4356495, at *4 (W.D.N.Y.
Sept. 13, 2018) (remanding where ALJ failed to provide an

adequate explanation of his assessment of a medical opinion, thereby "depriving the Court of the ability to perform a meaningful review").

Because the ALJ's RFC failed to take into account all of the evidence of plaintiff's functional limitations, her determination that plaintiff was capable of performing jobs that existed in significant numbers in the national economy was not supported by substantial evidence. On remand, the ALJ must consider whether plaintiff (1) would be off task more than ten percent of the day, (2) absent more than one day per month, (3) would require four daily reminders to stay on task, or (4) could not make decisions.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order remand for further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks

omitted).   Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.   *Pratts*, 94 F.3d at 39.

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is granted in part; defendant's cross-motion for judgment on the pleadings is denied; and this case is remanded for further proceedings consistent with this Memorandum and Order.   The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.


**SO ORDERED.**

Dated:      March 4, 2021
            Brooklyn, New York


                                        /s/
                                  **HON. KIYO A. MATSUMOTO**
                                  United States District Judge
                                  Eastern District of New York

29